**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol E Reid, | No. CV-17-08061-PCT-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, Xanterra South Rim LLC, and Xanterra Parks & Resorts Incorporated, | |
| Defendants. | |

Plaintiff Carol Reid fell on a single-step transition while visiting Grand Canyon National Park. The building where Reid fell was owned by the United States, through the National Park Service, and was maintained and operated by Xanterra, a contractor of the United States. Reid sued the United States and Xanterra, alleging she fell as a result of the "unreasonably dangerous condition" of the single-step transition. (Doc. 18 at 3.) The United States filed a crossclaim against Xanterra on the issue of indemnification. (Doc. 25.)

The United States moves for summary judgment on Reid's claims and the United States' crossclaim against Xanterra, (Doc. 59), and Xanterra cross-moves for summary judgment (Doc. 68). Xanterra also moves for summary judgment on Reid's claims on the basis of the statute of limitations. (Doc. 61.) For the following reasons, the United States' Motion for Summary Judgment (Doc. 59) is granted in part and denied in part. Xanterra's

1  Cross-Motion for Summary Judgment (Doc. 68) is granted in part and denied in part.

2  Xanterra's Motion for Summary Judgment on Plaintiff's Claims (Doc. 61) is granted.

3  **BACKGROUND**

4  Grand Canyon National Park is owned by the United States of America through the

5  National Park Service ("NPS").[1]  (Doc. 60 at 2.)  The Director of the NPS (the "Director")

6  acts "on behalf of the Secretary of the Interior and the United States, and his duly

7  authorized representatives."  (Doc. 60-5 at 7.)  The NPS has entered into concession

8  contracts with certain for-profit concessioners to provide visitors with accommodations,

9  facilities, and services in the national parks.  (Doc. 60 at 2.)

10  In 2002, NPS and Xanterra South Rim,[2] ("Xanterra" or the "Concessioner"), entered

11  into a concession contract (the "Contract").  After its original ten-year term, the Contract

12  was renewed annually until it expired on December 31, 2014.  (Docs. 60 at 2; 60-3 at 42.)

13  The Contract required Xanterra to operate and maintain the Mather Campground Camper

14  Services Building ("Camper Services") and adjacent lands: "The Concessioner shall

15  provide, operate and maintain the required and authorized visitor services and any related

16  support facilities and services in accordance with this Contract to such an extent and in a

17  manner considered satisfactory by the Director."  (Doc. 60-5 at 11.)  On a day to day basis,

18  Xanterra employees—rather than NPS employees—worked at Camper Services.  (Doc. 60-

19  4 at 4.)

20  As part of its maintenance duties, Xanterra conducted monthly safety inspections,

21  which involved a walkthrough of the facility and evaluation of several items on a checklist.

22  (Doc. 60 at 5.)  These monthly evaluations were for Xanterra's internal operations and were

23  not shared with NPS.  (Doc. 60 at 5.)  The Contract provided NPS would conduct its own

24  inspections: "The NPS shall inspect and monitor concession facilities and services with

25  respect to NPS policy [and] applicable standards . . . .  The NPS will evaluate all services

26  and facilities operated by the Concessioner to ensure public safety and health, ensure sound

27  ---
[1] Unless otherwise noted, factual statements included in the Court's summary are undisputed.

28  [2] The 2002 Concession Contract was between the NPS and Amfac Resorts, LLC, which subsequently changed its name to Xanterra South Rim, LLC.

environmental management, identify maintenance and operating deficiencies as they may occur, and ensure satisfactory services and accommodations for the general public within assigned areas of responsibility." (Doc. 60-5 at 49.) Additionally, the Contract required the Director to "undertake appropriate inspections, and shall establish and revise, as necessary, a Maintenance Plan consisting of specific requirements which shall be adhered to by the Concessioner." (Doc. 60-5 at 24.) The Maintenance Plan, in turn, required Xanterra to prepare an annual "written maintenance program to be completed during the following year" and to submit it to the NPS. (Doc. 60-7 at 4.)

The Contract was in place in September 2014, when Plaintiff Carol Reid ("Reid") visited Grand Canyon National Park. On September 5, 2014, Reid went to Camper Services to use the restroom. (Docs. 60 at 7; 67 at 3.) Reid entered the building through a door that was at the same level on both sides of the threshold. (Doc. 67 at 3.) After using the restroom, Reid exited the building through a different door, although she mistakenly believed she was exiting through the same door she used to enter. (Doc. 67 at 4.) The door through which she exited had a single-step transition at the landing. (Docs. 60 at 7; 67 at 4). In other words, when someone exited through that door, there was a single downward step to the ground. (Docs. 60 at 7; 67 at 4.) The face (riser) and a portion of the top edge of the single step were painted white. (Doc. 67 at 4.) There was no signage on or near the door alerting visitors to the single-step change in elevation. (Doc. 67 at 4.) Reid testified the outdoors area was a "covered patio area." (Doc. 69-1 at 2.)

When Reid exited the door to go outside, she followed "a gentleman in front of [her] who opened the door" and held it open. (Docs. 67-1 at 1; 69-1 at 3.) Reid testified there was a second man in front of him, "who was standing on what [she] later understood to be the step." (Doc. 67-1 at 2.) In order to exit the area, Reid moved to get around the man holding the door, taking two or three steps to the right. (Doc. 67 at 4.) Reid testified: "I sidled to my right. And within a couple of sidles, I found that my right foot was not in contact with a hard surface, and I tumbled to my right and cratered down on my right wrist." (Doc. 67-1 at 2.) Right before she fell, Reid did not look down and was not "watching

where [her] feet were falling." (Doc. 69-1 at 7.) Reid alleges the fall caused her to fracture her right ulna and radius, which required her to undergo surgery. (Doc. 18 at 4.)

Reid testified in deposition that when she fell, it was a clear day in the "middle of the day." (Doc. 69-1.) The only lighting issue was associated with "coming out of a lit building into a dark, covered patio area." (Doc. 69-1 at 2.) Reid testified her view of the patio was partially obstructed by the man holding the door in front of her, but there was nothing obstructing her view of the patio to the right. (Doc. 69-1 at 3.) Although there were signs on the door that said "No Smoking" and "No Firearms," Reid did not read them at the time. (Doc. 69-1 at 4.) Reid testified the single step transition was neither cracked nor otherwise defective. (Doc. 69-1 at 5.)

Reid sued the United States on March 27, 2017, alleging the "unreasonably dangerous condition" of the single-step transition caused her to fall and sustain injuries. (Doc. 1 at 2.) The United States answered, averring that pursuant to the Concession Contract, Xanterra "possessed the camp services building" at the time of the accident. (Doc. 7 at 2.) On October 10, 2017, Reid filed an amended complaint, adding Xanterra[3] as a defendant. (Doc. 18.) The United States subsequently filed a crossclaim against Xanterra on the issue of indemnification. (Doc. 25.)

Before the Court are the United States' Motion for Summary Judgment (Doc. 59), Xanterra's Cross Motion for Summary Judgment (Doc. 68),[4] and Xanterra's Motion for Summary Judgment on Plaintiff's Claims (Doc. 61.) The Court addresses each of the motions below.

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the

---

[3] Reid sued Xanterra South Rim, LLC and Xanterra Parks & Resorts, Inc. The parties shall be collectively referred to as "Xanterra."
[4] While Xanterra's filing may have been procedurally improper, the Court shall consider the questions presented because they are pure questions of law and in response to the United States' interpretation of the Contract.

suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing a motion for summary judgment, all evidence must be construed in the light most favorable to the non-moving party.

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## ANALYSIS

### I.      Xanterra's Motion for Summary Judgment on Reid's Claims

Xanterra moves for summary judgment on Reid's claims on the basis that the two-year statute of limitations has expired. (Doc. 61.) In response, Reid states she does not oppose Xanterra's motion. (Doc. 70 at 1.) Thus, Xanterra's Motion for Summary Judgment on Plaintiff's Claims (Doc. 61) is granted and Reid's claims against Xanterra are dismissed.

### II.     The United States' Motion for Summary Judgment and Xanterra's Cross-Motion for Summary Judgment on the United States' Cross-Claim

Xanterra and the United States cross-move for summary judgment on the issue of indemnification. The Contract's indemnification clause provided:

> The Concessioner agrees to assume liability for and does hereby agree to save, hold harmless, protect, defend and indemnify the United States of America, its agents and employees from and against any and all liabilities, obligations, losses, damages or judgments . . . claims, actions, suits, costs and expenses . . . of any kind and nature whatsoever . . . and by whomsoever made, in any way connected with or arising out of the activities of the Concessioner . . . under this Contract. (Doc. 60-5 at 27.)

The United States argues it is entitled to indemnification by Xanterra[5] for any damages that occurred as a result of Xanterra's negligence or the United States' negligence. (Doc. 59 at 11.) Xanterra agrees it is required to indemnify the United States for damages that occurred as a result of Xanterra's negligence, but moves for a determination of law that Xanterra is not required to indemnify the United Sates for damages that occurred as a result of the United States' own actions or omissions.

The Supreme Court has instructed that "indemnification for the indemnitee's own negligence must be clearly and unequivocally indicated as the intention of the parties." *United States v. Seckinger*, 397 U.S. 203, 211 (1970). In the context of government contracts, "if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.* at 212; *United States v. Contract Mgmt.*, 912 F.2d 1045, 1048 (9th Cir. 1990) ("If the government wants to have the contractor assume responsibility for damages solely to the government's negligence, we find it difficult to understand its reluctance to state so unequivocally."). Federal law governs interpretation of this contract between the United States and its contractor. *Id.* at 209.

Here, the Court is not "firmly convinced" from the terms of the Contract that the parties clearly intended Xanterra to indemnify the United States for the United States' own negligence. Although the indemnification clause stated Xanterra "agrees to save, hold harmless, protect, defend and indemnify the United States of America," Xanterra's obligation to indemnify is expressly limited to claims "in any way connected with or arising out of the activities of the Concessioner . . . under this Contract." (Doc. 60-5 at 27.) *See United States v. English*, 521 F.2d 63, 67 (9th Cir. 1975) (holding a contractual provision did not clearly express the intent for a contractor to bear the burden of the government's negligence when the provision stated: "The Contractor shall hold and save the government, its officers and agents, free and harmless from liability of any nature occasioned by His

---

[5] According to the United States, it is moving for summary judgment regarding indemnification only as to Xanterra South Rim, LLC and concedes its indemnification cross-claim as to Xanterra Parks & Resorts, Inc. (Doc. 59 at 2.)

operations."). This limiting clause is instructive, and the Court cannot discern from its language the clear and unequivocal intent for Xanterra to indemnify the United States "for any acts of negligence by the United States." (Doc. 59 at 11.)

The United States relies on two cases that are inapposite. First, the United States cites *Smith v. United States*, 497 F.2d 500, 507 (5th Cir. 1974), in which the Fifth Circuit considered the following provision:

> The Contractor shall assume all liability and hold and save the Government, its officers, agents and employees harmless for any and all claims for personal injuries, property damages or other claims arising out of or in connection with the transportation, storage and use of explosives under the contract.

The Fifth Circuit affirmed the district court's conclusion that under this provision, the government was entitled to indemnity from its contractor for personal injury claims involving an explosion. In *Smith*, the limiting clause was "arising out of or in connection with the transportation, storage and use of explosives." *Id.* The accident at issue was an explosion caused by dynamite charges and the plaintiffs worked as blasters and their helpers. *Id.* at 503–04. Thus, the claims clearly qualified as "arising out of or in connection with the transportation, storage and use of explosives." *Id.* at 507. Here, by contrast, the United States asks the Court to effectively read the limiting clause out of the Contract by requiring Xanterra to indemnify the United States for *any* negligence on the part of the United States.

Second, the United States cites *Gibbs v. United States*, 599 F.2d 36, 40 (2d Cir. 1979), in which the Second Circuit required a contractor to indemnify the government for the government's own negligence under the following provision:

> The Contractor shall save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability resulting from, brought for, or on account of any personal injury or property damage received or sustained by any person, persons, or property growing out of, occurring, or attributable to any work performed under or related to this contract, regardless of whether such claims, loss, damage, actions, cause of

- 7 -

1
2
actions, expense and/or liability may be attributable to the fault, failure, or negligence of the Contractor.

3 In *Gibbs*, the contractual language explicitly stated indemnification was required
4 "regardless of whether such claims . . . may be attributable to the fault, failure, or
5 negligence of the Contractor." *Id.* Further, there were no "express exceptions to the broad
6 language" limiting indemnification to certain situations, as there is here. *Id.* at 40. Thus,
7 Xanterra shall not be required to indemnify the United States for the United States' own
8 negligence.

9 **III.    The United States' Motion for Summary Judgment and Xanterra's Cross-**
10 **Motion for Summary Judgment**

11 The United States additionally moves for summary judgment on the basis of the
12 independent contractor exception of the FTCA. (Doc. 59 at 2.) According to the United
13 States, Xanterra was an independent contractor of the United States and was responsible
14 for maintaining the single-step transition at Camper Services. As a result, the United States
15 argues the independent contractor exception bars Reid's claims against the United States.
16 (Doc. 59 at 6.) Xanterra responds that although it was responsible for painting, lighting,
17 and signage—aspects of "maintenance" under the Contract—it was not responsible for the
18 design and construct of the single-step transition. (Doc. 68 at 11.) As such, Xanterra moves
19 for a determination of law stating that under the Contract, the United States, not Xanterra,
20 was responsible for the design and construct of the single-step transition. (Doc. 68 at 10.)

21 The FTCA provides a cause of action on claims against the United States "for injury
22 or loss of property, or personal injury or death caused by the negligent or wrongful act or
23 omission of any employee of the Government while acting within the scope of his office
24 or employment, under circumstances where the United States, if a private person, would
25 be liable to the claimant in accordance with the law of the place where the act or omission
26 occurred." 28 U.S.C. § 1346(b). "Employee of the government" includes "officers or
27 employees of any federal agency," but explicitly excludes "any contractor with the United
28 States." 28 U.S.C. § 2671. Thus, a plaintiff may not sue the United States under the FTCA

1    for the acts or omissions of independent contractors.  *Autery v. United States*, 424 F.3d

2    944, 956 (9th Cir. 2005).

3           Xanterra does not dispute it was an independent contractor with the United States

4    at the time of Reid's accident.  Nor does Xanterra dispute that the United States delegated

5    to Xanterra obligations regarding "painting the single step transition, posting required

6    signage, and maintaining existing lighting systems."  (Doc. 68 at 5.)  Reid also does not

7    dispute that Xanterra was responsible for maintenance of Camper Services and did not

8    require the United States' approval to make decisions about painting and/or signage.  (Doc.

9    66 at 5.)  The undisputed facts show that Xanterra, not the United States, was responsible

10   for painting, signage, or lighting at Camper Services under the Contract.  Thus, to the extent

11   Reid's claim is based on negligence involving painting, signage, or lighting of the single-

12   step transition, the United States is not subject to suit under the FTCA.  Because Reid's

13   claims against Xanterra are barred by the statute of limitations, Reid has no remaining

14   claims based on painting, signage, or lighting of the single-step transition.

15          Reid also claims the design and construct of the single-step transition were

16   inherently dangerous and caused her injuries.  (Doc. 66 at 4 ("[S]ingle step transition

17   elevation changes are inherently dangerous[.]".)  The question, then, is whether the United

18   States or Xanterra was responsible for the design and construct of the single-step transition.

19   Xanterra and the United States agree "the single step transition was present at the outset of

20   the Contract . . . and that Xanterra did not install or construct the step."  (Doc. 72 at 3.)

21   The parties further agree that pursuant to the Contract, Xanterra accepted Camper Services

22   "as is."  (Doc. 60-5 at 20.)  Finally, it is undisputed that neither NPS nor Xanterra proposed

23   any changes to the design and construct of the single-step transition prior to Reid's

24   accident.  (Doc. 67 at 7.)

25          Xanterra argues that even though the United States was not responsible for the day-

26   to-day maintenance of Camper Services, it was solely responsible for the design and

27   construct of the single step.  The United States has not stated a clear position and the Court

28   cannot discern from the United States' briefing whether it moves for summary judgment

on the issue of design and construct, or merely opposes Xanterra's motion for summary judgment. (Doc. 72 at 3–5.) For example, the United States does not appear to dispute it had *some* responsibility over the design and construct of the single-step transition, stating: "The United States acknowledges that the single step transition was present at the outset of the Contract with Xanterra, and that Xanterra did not install or construct the step. The United States further acknowledges it may be subject to suit for its own negligence to the extent it breached a duty of care not delegated to Xanterra, and to the extent such duty does not impose strict liability." (Doc. 72 at 3.) Rather, the United States argues it was not *solely* responsible for the design and construct of the single-step transition because Xanterra had the duty to propose and identify any necessary changes to the single-step transition. (Doc. 72 at 5.) After review of the parties' briefing and submitted exhibits, the Court cannot determine, as a matter of law, to whom the Contract allocates responsibility for the design and construct of the single-step transition. The United States is ordered to clarify its position and file another motion for summary judgment on the issue of liability for design and construct. Because Reid has no remaining claims against Xanterra, Reid is ordered to respond to the United States' motion in accordance with local rules.

Accordingly,

**IT IS ORDERED** the United States' Motion for Summary Judgment (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Xanterra's Cross Motion for Summary Judgment (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Xanterra's Motion for Summary Judgment on Plaintiff's Claims (Doc. 61) is **GRANTED**. Plaintiff's claims against Defendant Xanterra are **DISMISSED**.

**IT IS FURTHER ORDERED** no later than April 15, 2019, the United States shall move for summary judgment on Reid's remaining claims or file a notice stating it will not seek summary judgment. Response and reply shall be filed in accordance with local rules.

Dated this 19th day of March, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge